FILED - LN
September 23, 2026 9:01 AM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: nmi / SCANNED BY:

MATTHEW KEITH ALWARD
2506 Newark Avenue
Lansing, Michigan 48911
Telephone: (517) 574-6328
Email: matthewalward48@gmail.com
Plaintiff, pro se

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MATTHEW KEITH ALWARD,

Plaintiff,

Case No. **1:26-cv-2655**

**Hala Y. Jarbou - Chief U.S. District Judge**
**Phillip J. Green - Magistrate Judge**

Hon. ____

v.

UNITED STATES OF AMERICA,

Defendant.

---

**VERIFIED COMPLAINT FOR DAMAGES**
**UNDER THE FEDERAL TORT CLAIMS ACT**
**(Negligence: Inmate Assault at FCI Beckley, West Virginia)**

## PRELIMINARY STATEMENT

Plaintiff Matthew Keith Alward brings this action against the United States of America under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1) and 2671-2680. On or about February 3, 2026, while Plaintiff was a federal inmate working in the Food Service department at the Federal Correctional Institution in Beckley, West Virginia ("FCI Beckley"), five inmates beat him unconscious in a bakery room that had no cameras and no staff present. Before the attack, Food Service staff heard the lead attacker threaten Plaintiff, and Plaintiff told staff he feared retaliation. No staff member took any protective step, the supervisor responsible for the inmate cooks stayed in the staff office, and after the beating Plaintiff was sent back to his housing unit, bleeding, without medical attention for roughly three hours. Plaintiff suffered fractures and injuries to his eye socket and jaw that required facial reconstruction surgery with plates and screws, and he continues to suffer permanent injury. The Federal Bureau of Prisons

("BOP") finally denied Plaintiff's administrative claim on September 14, 2026 (Exhibit A), and this action is timely.

## JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction under 28 U.S.C. § 1346(b)(1), which gives the district courts exclusive jurisdiction over civil actions on claims against the United States for money damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

2. The acts and omissions described in this Complaint occurred at FCI Beckley, in Beaver, West Virginia. The substantive law of West Virginia therefore governs liability. 28 U.S.C. § 1346(b)(1).

3. The Supreme Court has held that federal prisoners may sue the United States under the FTCA for injuries sustained during confinement because of the negligence of prison employees. *United States v. Muniz*, 374 U.S. 150, 150 (1963) ("we hold that such suits are within the purview of the Act").

4. Venue is proper in the Western District of Michigan under 28 U.S.C. § 1402(b), which provides that an FTCA action "may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." Plaintiff resides in Lansing, Ingham County, Michigan, which lies within the Southern Division of this District. W.D. Mich. LCivR 3.2.

## PARTIES

5. Plaintiff Matthew Keith Alward, BOP Register No. 22732-040, resides at 2506 Newark Avenue, Lansing, Michigan 48911. At all times relevant to the events described below, Plaintiff was a federal inmate in BOP custody at FCI Beckley. He is now serving the

remainder of his sentence on home confinement under the supervision of the BOP Residential Reentry Management field office in Detroit, Michigan.

6. Defendant United States of America is the proper and only defendant in an FTCA action. 28 U.S.C. §§ 2674, 2679(a)-(b)(1). The BOP is an agency of the United States within the Department of Justice. The BOP staff members named in this Complaint (Food Service staff members Austin Boyer, Richmond, Jackson, and Zimmerman; Food Service Administrator Bailey; and Officers Brian Ball, Lily, and Law) were employees of the United States acting within the scope of their federal employment at all times relevant to this Complaint.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

7. The FTCA requires a claimant to present the claim to the appropriate federal agency, and to have it "finally denied by the agency in writing and sent by certified or registered mail," before filing suit. 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies.").

8. Plaintiff presented a written administrative tort claim to the BOP arising from the February 3, 2026 attack. The BOP assigned it Tort Claim No. TRT-MXR-2026-03312. According to the BOP, it denied the claim by certified mail on April 9, 2026.

9. On August 21, 2026, the BOP received Plaintiff's executed Standard Form 95 ("SF-95") and supporting declaration, signed August 15, 2026. The SF-95 stated the claim in detail and demanded a sum certain of $3,000,000.00 for personal injury. The BOP received it within six months after April 9, 2026.

10. The Department of Justice regulation governing FTCA claims provides, in relevant part:

> Prior to the commencement of suit and prior to the expiration of the 6-month period provided in 28 U.S.C. 2401(b), a claimant . . . may file a written request with the agency for reconsideration of a final denial of a claim under paragraph (a) of this section. . . . Final agency action on a request for reconsideration shall be

> effected in accordance with the provisions of paragraph (a) of this section.

28 C.F.R. § 14.9(b).

11. By letter dated September 14, 2026, signed for the Acting Regional Counsel of the BOP Mid-Atlantic Regional Office, the BOP acknowledged receipt of Plaintiff's August 21, 2026 submission, stated that it was "interpreting [it] as a request to reconsider," and stated: "your claim is denied. You have six months from the date of mailing of this letter to file suit in the appropriate U.S. District Court." A true and correct copy of the September 14, 2026 letter is attached as Exhibit A.

12. The September 14, 2026 letter is the BOP's final written denial of Plaintiff's claim. Plaintiff has exhausted his administrative remedies under 28 U.S.C. § 2675(a) and 28 C.F.R. § 14.9.

13. This action is filed within six months after the date of mailing of the September 14, 2026 notice of final denial, and is timely under 28 U.S.C. § 2401(b).

## STATEMENT OF FACTS

### A. Plaintiff's Food Service Assignment and the Threats Before the Attack

14. At FCI Beckley, Plaintiff was assigned to the Food Service department and worked as a cook.

15. In early 2026, Food Service staff asked Plaintiff to take the position of staff dining cook. The inmate then holding that position was an inmate named Fultz.

16. Fultz had held his Food Service position for more than one year. Food Service staff member Zimmerman later told Plaintiff that Food Service Administrator Bailey knew that Fultz was not supposed to hold the position for more than one year and allowed him to keep it anyway.

17. Fultz was frequently in trouble and was known in Food Service as the leader of a group of inmates. Because he cooked for staff, he received privileges that other inmates did not, including outside food, the ability to cook items in the kitchen and sell them on the compound,

freedom to walk the yard, and extra commissary and linens. Fultz also did Food Service ordering, a task that staff should have performed.

18. Before the attack, Fultz threatened Plaintiff in the presence of Food Service staff members Boyer and Richmond. Fultz said that Plaintiff was "doing too much" and that "things could happen." Boyer and Richmond heard the threat. They widened their eyes and smirked, and one of them said, in substance, "oh, he ain't gonna do nothing." Neither Boyer nor Richmond took any action in response.

19. Separately, before the attack, Plaintiff told Food Service staff members Jackson, Boyer, Richmond, and Zimmerman about the conflict between Fultz and Plaintiff over the staff dining cook position, and told them that he feared retaliation from Fultz. Their response was, in substance, that Fultz was "gonna have to get over it."

20. After receiving the threat and Plaintiff's warning, no staff member separated Plaintiff from Fultz, changed either inmate's work assignment or schedule, increased supervision of the Food Service work areas, reported the threat, or took any other protective step known to Plaintiff.

**B. The Attack in the Unsupervised Bakery Room**

21. The attack occurred on or about February 3, 2026, at approximately 12:18 p.m., inside the bakery room of the Food Service building at FCI Beckley, 1600 Industrial Park Road, Beaver, West Virginia 25813. Plaintiff believes the date was February 3, 2026, and knows that it was within the first few days of February 2026.

22. Immediately before the attack, Plaintiff was working in the main kitchen, in an area covered by a camera, just outside the bakery room. Inmate Jameson, also known as "Trigg," opened the bakery door and told Plaintiff to "come here for a second." Plaintiff stepped into the bakery. There were no cameras inside the bakery room.

23. Inside the bakery, five inmates attacked Plaintiff: Fultz, an inmate named Bailey (not Food Service Administrator Bailey), Singleton, Jameson, and an inmate Plaintiff believes

is named Richardson. They beat Plaintiff with their fists and boots and knocked him unconscious.

24. No staff member stopped the attack. The attackers stopped on their own. When Plaintiff regained consciousness, Singleton and Richardson were holding his head over a garbage can. Plaintiff, who takes blood thinners, was bleeding heavily from his face. The attackers made Plaintiff clean his own blood from the floor.

25. No staff member was present in the bakery or, to Plaintiff's knowledge, anywhere in the back of the house of Food Service during the attack. The last staff member Plaintiff saw before the attack was Austin Boyer, the Food Service supervisor for the inmate cooks, approximately thirty to forty-five minutes earlier, when Boyer opened the cooler and then returned to the staff office.

26. Food Service staff told Plaintiff that the kitchen supervisor is required to remain in the presence of the inmates working in the back of the house. On information and belief, the post orders and practices governing the Food Service cook supervisor post at FCI Beckley required the supervisor to remain with and actively supervise the inmate workers in the back of the house, including the bakery. Boyer did not do so.

27. BOP Program Statement 5251.06, Inmate Work and Performance Pay (Oct. 1, 2008), which was in effect on February 3, 2026, provides: "Each staff supervisor will monitor and evaluate the work performance of each inmate assigned to the detail." BOP Program Statement 5251.06, at 10.

28. BOP Program Statement 5500.14, Correctional Services Procedures Manual, § 304, which was in effect on February 3, 2026, provides that "[a]ll Departments must conduct a census of all inmates assigned to their area during each work period (AM and PM)." BOP Program Statement 5500.14 CN-1, ch. 3, at 3.

### C. The Delay in Medical Attention

29. The first staff member to see Plaintiff after the attack was Officer Brian Ball, sometime after approximately 12:40 p.m., at the end of his shift. Officer Ball unlocked the door so that Plaintiff could leave Food Service and return to his housing unit. Plaintiff was covered in blood and felt faint. Officer Ball did not send Plaintiff to the medical department or report his injuries.

30. Plaintiff's housing unit officer, Officer Lily, saw the marks on Plaintiff's face and the blood when he let Plaintiff into the housing unit. All doors were locked and had to be opened by staff. Officer Lily did not send Plaintiff to the medical department at that time. Plaintiff went to his room.

31. At approximately 3:15 p.m., Officer Lily came to Plaintiff's room and told him the kitchen needed him back for the 4:00 p.m. count. When Plaintiff came to the door, Officer Lily told him he needed to go to the Lieutenant's office to be assessed for his injuries. To Plaintiff's knowledge, the assault was not reported until approximately three hours after it happened.

32. Plaintiff was then taken to a hospital in Beckley, West Virginia. After a few hours there, he was rushed to a hospital in Charleston, West Virginia, because he needed specialized care and surgery that the Beckley hospital did not provide.

### D. Plaintiff's Injuries

33. As a result of the attack, Plaintiff suffered injuries to his eye socket, jaw, and neck; a concussion; severe bruising and swelling of his face; and heavy blood loss.

34. Plaintiff underwent facial reconstruction surgery in Charleston, West Virginia, in which surgeons installed plates and screws. The surgery was performed through the inside of Plaintiff's mouth. Doctors also told Plaintiff that air had escaped from his lungs and lodged in his neck (a form of emphysema).

35. Plaintiff was on a liquid diet for approximately two months, living on nutritional supplement drinks, and lost approximately forty pounds.

36. Plaintiff continues to suffer nerve damage and numbness in his face, pain and difficulty chewing and swallowing, constantly blurred vision, headaches that radiate from his jaw, and night terrors.

37. The surgeon who performed Plaintiff's facial reconstruction told him that he may need further surgery and follow-up care. Plaintiff has been told he will take gabapentin, currently 3,200 milligrams, for the rest of his life.

**E. Statements by BOP Staff After the Attack**

38. Approximately two or three days after the attack, while Plaintiff was in the hospital, Food Service staff member Zimmerman, who has approximately twenty years of BOP service, came to Plaintiff's hospital room. Food Service staff member Jackson, who acted as a supervisor in the kitchen, was also present.

39. Zimmerman told Plaintiff, in these or nearly these words: "I am sorry this happened to you, we knew better about Fultz and what he was capable of." Zimmerman also told Plaintiff that Food Service Administrator Bailey knew Fultz was not allowed to hold his position for more than one year; that Bailey let Fultz do the ordering; that Fultz had tried to tell officers what to do; that Fultz had "built an empire" in the kitchen and brought his associates in; and that Boyer should have been out in the kitchen instead of "hiding" in the office and the staff dining room.

40. Jackson told Plaintiff, in these or nearly these words: "We really dropped the ball on this, Alward, I apologize for this happening, we should never have allowed for Fultz to stay in." Jackson said the BOP had made a mistake.

41. Officer Law also apologized to Plaintiff. In Plaintiff's presence, Officer Law told other officers that the attack was their fault because of the taunting of Fultz, the lack of

cameras in the bakery, and the lack of supervision and rounds. Officer Law said he did not know why there were no cameras in the bakery when there were supposed to be.

42. The Lieutenant and a nurse in the medical unit also spoke with Plaintiff about the officers' failure to be present in the Food Service work area and to make rounds.

**F. Facts Bearing on the Nature of the Staff Conduct**

43. The Supreme Court has explained that, to survive a motion to dismiss, an FTCA complaint "must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *United States v. Gaubert*, 499 U.S. 315, 324-25 (1991). The Sixth Circuit has stated that "a guard's conscious decision not to protect an inmate from a specific and immediate attack cannot 'be said to be grounded in the policy of the regulatory regime.'" *Montez v. United States*, 359 F.3d 392, 398 (6th Cir. 2004).

44. Plaintiff does not challenge any BOP decision about where to house Plaintiff or his attackers, which institution to assign them to, or whether to designate them as separatees. Plaintiff's claims arise from what staff did and failed to do on the Food Service floor and afterward.

45. Boyer's absence from the back of the house for thirty to forty-five minutes was not the result of any staffing shortage, emergency, security assessment, or competing assignment known to Plaintiff. Boyer was in the staff office. A fellow Food Service staff member described Boyer as "hiding" there.

46. When Boyer and Richmond heard Fultz threaten Plaintiff, and when Plaintiff told Jackson, Boyer, Richmond, and Zimmerman that he feared retaliation, those staff members did not investigate the threat, report it, or weigh any security or institutional consideration known to Plaintiff. They smirked, dismissed the threat, and said that Fultz would "have to get over it."

47. When Officer Ball and Officer Lily saw Plaintiff covered in blood after the attack, they did not send him to the medical department. No security, staffing, or medical reason for that delay was ever given to Plaintiff.

### G. Events After Plaintiff Left the Hospital

48. After Plaintiff left the hospital, he was placed in the Special Housing Unit at FCI Beckley and recommended for transfer. While he was there, his attackers sent letters to inmates housed with Plaintiff stating that Plaintiff had "snitched," and staff allowed his attackers to confront Plaintiff while he was in an outdoor recreation cage. Plaintiff was pressured to recant his account and was offered $5,000 to help his attackers in their disciplinary proceedings. He refused.

49. Plaintiff was transferred to FCI Schuylkill, in Pennsylvania, in approximately late April or May 2026, and was later released to home confinement in Lansing, Michigan.

## COUNT I
## NEGLIGENCE: FAILURE TO SUPERVISE THE FOOD SERVICE WORK AREA
## (West Virginia common law; 28 U.S.C. §§ 1346(b)(1), 2674; 18 U.S.C. § 4042(a)(2)-(3))

50. Plaintiff repeats and incorporates paragraphs 1 through 49 as if fully set out here.

51. Under West Virginia law, "[i]n order to establish a prima facie case of negligence in West Virginia, it must be shown that the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff." *Aikens v. Debow*, 208 W. Va. 486, 541 S.E.2d 576, 580 (2000) (citation omitted).

52. Federal law directs that the BOP "shall . . . provide for the safekeeping, care, and subsistence" and "provide for the protection" of all persons in its custody. 18 U.S.C. § 4042(a)(2)-(3).

53. Plaintiff was in the custody of the BOP and was assigned by BOP staff to work in the Food Service department, where he could not leave, lock a door, or summon help on his own. Food Service staff, including cook supervisor Boyer, owed Plaintiff a duty to use

reasonable care to supervise the inmate workers in the Food Service work areas, including the bakery room.

54. Boyer left the inmate workers in the back of the house, including the bakery room, without any staff presence for approximately thirty to forty-five minutes and remained in the staff office, and no other staff member supervised or made rounds of the bakery room during that time.

55. During that unsupervised period, five inmates lured Plaintiff into the camera-less bakery room and beat him unconscious. No staff member was present to deter, observe, interrupt, or stop the attack, and the attackers stopped only on their own.

56. As a direct and proximate result of the acts and omissions described in this Count, Plaintiff suffered the injuries and damages described in paragraphs 33 through 37 above.

57. A private person in West Virginia who took custody of another person and put him to work under that private person's supervision would be liable to that person under these circumstances. The United States is therefore liable to Plaintiff under 28 U.S.C. §§ 1346(b)(1) and 2674.

**COUNT II**
**NEGLIGENCE: FAILURE TO ACT ON A SPECIFIC THREAT**
**(West Virginia common law; 28 U.S.C. §§ 1346(b)(1), 2674; 18 U.S.C. § 4042(a)(2)-(3))**

58. Plaintiff repeats and incorporates paragraphs 1 through 49 as if fully set out here.

59. Food Service staff members Boyer and Richmond personally heard Fultz threaten Plaintiff, saying that Plaintiff was "doing too much" and that "things could happen." Plaintiff then told staff members Jackson, Boyer, Richmond, and Zimmerman that he feared retaliation from Fultz.

60. Food Service staff knew that Fultz led a group of inmates in Food Service, had been allowed to keep his job past the time he was supposed to hold it, and was losing that job to

Plaintiff. After the attack, Zimmerman told Plaintiff that staff "knew better about Fultz and what he was capable of."

61. Having heard a specific threat against Plaintiff from an identified inmate, Food Service staff owed Plaintiff a duty to use reasonable care in response, including by reporting the threat, increasing supervision of the areas where Plaintiff and Fultz worked together, or keeping Plaintiff out of unsupervised, camera-less areas with Fultz and his associates.

62. Food Service staff did none of these things. They dismissed the threat, took no action, and then left Plaintiff, Fultz, and Fultz's associates working in the back of the house with no staff present.

63. Fultz and four other inmates carried out the threatened harm in the bakery room on or about February 3, 2026. As a direct and proximate result of the acts and omissions described in this Count, Plaintiff suffered the injuries and damages described above.

64. A private person in West Virginia with custody of another person, who ignored a known and specific threat of violence against that person under these circumstances, would be liable under West Virginia law. The United States is therefore liable to Plaintiff under 28 U.S.C. §§ 1346(b)(1) and 2674.

**COUNT III**
**NEGLIGENCE: DELAY IN MEDICAL ATTENTION**
**(West Virginia common law; 28 U.S.C. §§ 1346(b)(1), 2674; 18 U.S.C. § 4042(a)(2))**

65. Plaintiff repeats and incorporates paragraphs 1 through 49 as if fully set out here.

66. The BOP is directed to "provide for the safekeeping, care, and subsistence" of persons in its custody. 18 U.S.C. § 4042(a)(2). Because Plaintiff was locked inside the institution and could not seek medical care on his own, BOP staff who saw that Plaintiff was injured owed him a duty to use reasonable care to get him prompt medical attention.

67. Officer Ball saw Plaintiff covered in blood and faint shortly after the attack and let him out of Food Service without sending him to the medical department. Officer Lily saw the marks on Plaintiff's face and the blood, let him into the housing unit, and did not send him

to the medical department until approximately 3:15 p.m., when Plaintiff was being called back to work.

68. Plaintiff, who takes blood thinners and had just been knocked unconscious, went approximately three hours after the attack without any medical assessment, while suffering a concussion, facial fractures, air in his neck, and heavy bleeding.

69. As a direct and proximate result of the delay described in this Count, Plaintiff suffered additional pain, blood loss, fear, and distress, and his injuries went untreated during that period.

70. A private person in West Virginia with custody of another person, who saw that person bleeding and injured and did not obtain medical attention for him for approximately three hours, would be liable under West Virginia law. The United States is therefore liable to Plaintiff under 28 U.S.C. §§ 1346(b)(1) and 2674.

## DAMAGES

71. As a direct and proximate result of the negligence of the employees of the United States described above, Plaintiff has suffered and will continue to suffer physical injury; facial fractures and disfigurement; surgery and hospitalization; permanent nerve damage and numbness; pain and difficulty eating and swallowing; blurred vision; headaches; significant weight loss; night terrors, fear, and emotional distress; loss of enjoyment of life; and past and future medical expenses, including further surgery, follow-up care, and lifetime medication.

72. The amount of the claim presented to the BOP, and on which the BOP took final action on September 14, 2026, was $3,000,000.00. 28 U.S.C. § 2675(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Matthew Keith Alward respectfully asks the Court to enter judgment in his favor and against Defendant United States of America, and to award:

A. Compensatory damages in the amount of $3,000,000.00, or such other amount as the evidence at trial supports, not to exceed the amount permitted by 28 U.S.C. § 2675(b);

B. Plaintiff's costs of this action under 28 U.S.C. § 2412(a)(1); and

C. Such other and further relief as the Court finds just and proper.

Dated: 9/23/__________, 2026

Respectfully submitted,

X ______________________
MATTHEW KEITH ALWARD
Plaintiff, pro se
BOP Reg. No. 22732-040
2506 Newark Avenue
Lansing, Michigan 48911
Telephone: (517) 574-6328
Email: matthewalward48@gmail.com

**VERIFICATION**

I, Matthew Keith Alward, am the Plaintiff in this action. I have read the foregoing Verified Complaint. The facts stated in it are true of my own personal knowledge, except for those matters stated on information and belief or as statements made to me by others, and as to those matters I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746(2).

Executed on 9/23/ __________, 2026, at Lansing, Michigan.

X ______________________
MATTHEW KEITH ALWARD
Plaintiff, pro se